**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Stacy A. Jones,

        Case No. 2:13-cv-1265

      Plaintiff,

        Judge Graham

   v.

U-Haul Co. of Massachusetts and Ohio Inc., et al.,

      Defendants.

<u>OPINION AND ORDER</u>

      Plaintiff Stacy Jones brings this civil rights action against defendants U-Haul Co. of Massachusetts and Ohio Inc. ("U-Haul"), Dean Haske ("Haske"), and Roberta Tucker ("Tucker") (collectively "defendants"). Jones alleges that defendants discriminated against her on the basis of race and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Further, Jones alleges a state law claim under the Ohio Fair Employment Practices Act, O.R.C. § 4112, as well as numerous common law claims related to her employment with defendants. Finally, Jones seeks a declaratory judgment, pursuant to O.R.C. § 2721, regarding the enforceability of two arbitration agreements that Jones allegedly signed.

      This matter is before the Court on defendants' motion to compel arbitration and dismiss or stay proceedings pending arbitration. For the reasons that follow, the Court finds the defendants' motion well taken.

**I.    Background**

      On September 7, 1999, defendants hired Jones as a Reservation Manager at one of its Columbus, Ohio U-Haul locations; defendants employed Jones as an at-will employee. Am. Compl. ¶ 2.  As a Reservation Manager, Jones's duties included "direct[ing] incoming U-Haul equipment to dealerships and moving centers to fill every confirmed reservation and assist in controlling rental equipment inventories within…her geographic area to balance customer requirements with rental equipment supply." Aleo Aff. ¶ 20, doc. 14-1. Jones's position also

required her to be able to read and write in English. *Id.* Jones, a high school graduate who attended community college, met this requirement without issue.

In February 2006, defendants adopted and implemented a new dispute resolution policy called the U-Haul Arbitration Policy ("UAP"). U-Haul Arbitration Policy, doc. 14-2. The UAP consisted of two documents: (1) the Notice to Employees About U-Haul's New Arbitration Policy ("UAP Notice"), and (2) the U-Haul Employee Agreement to Arbitrate, ("UAP Agreement"). The UAP Notice provided:

> Effective February 20, 2006, [defendants] adopted and implemented a new arbitration policy, requiring mandatory, binding arbitration of disputes, for all new employees. …The UAP applies to all [defendants'] employees who are hired after February 20, 2006, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with [defendants] or the termination of that employment. Examples of the type of disputes or claims covered by the UAP include, but are not limited to, claims for wrongful termination of employment, breach of contract, fraud, employment discrimination, harassment or retaliation under the [ADA], [ADEA], [Title VII], state fair employment and housing acts or any other state or local anti-discrimination laws, tort claims… or any other legal or equitable claims and causes of action recognized by local, state or federal law or regulations. …Because the UAP changes the forum in which you may pursue claims against U-Haul and affects your legal rights, you may wish to review the UAP with an attorney or other advisor of your choosing. U-Haul encourages you to do so.
>
> <u>Your decision to accept employment or to continue employment with [defendants] constitutes your agreement to be bound by the UAP</u>.

*Id.* at 1 (emphasis in original).

On January 12, 2007, Jones maintains that she "was called into management's office and pressured to sign the [UAP Agreement] or lose her job with U-Haul...." Pl.'s Mem. in Opp'n at 2–3, doc. 15. Jones contends that she was "confused and did not actually understand the [UAP]…, had no idea what she was signing…, [and] did not realize that the [UAP] applied only to new employees." *Id.* According to Jones, the UAP "was being forced upon her as a requirement to keep her employment," and thus "[i]n order to keep her job, [Jones] signed the [UAP] that day." *Id.* It is undisputed that Jones signed the UAP, by hand, on January 12, 2007. After signing the UAP Agreement, Jones continued her at-will employment with defendants as a Reservation Manager.

In the summer of 2007, defendants updated the UAP and renamed it the Employment Dispute Resolution Policy ("EDR Policy"). U-Haul's EDR Policy, doc. 14-3. Like the UAP, the

EDR Policy also consisted of two documents: (1) the Notice to Employees About U-Haul's Employment Dispute Resolution Policy ("EDR Notice"), and (2) the U-Haul Employee Agreement to Arbitrate ("EDR Agreement"). *Id*.

In most respects, the language and terms of defendants' updated EDR Policy were almost identical to its original dispute resolution policy, the UAP. One difference was that the EDR Policy applied to *all* employees, not just new employees hired after February 20, 2006. *Id*. (emphasis added). The EDR Notice provided for "mandatory, binding arbitration of disputes, for *all* employees…[and] applies to all [defendants'] employees regardless of length of service or status...." *Id*. at 1 (emphasis added). The type of claims and disputes expressly covered by the EDR were identical to those claims and disputes covered by the UAP. *Id*. ("[T]he type of disputes or claims covered by the EDR include…the Age Discrimination in Employment Act, Title VII of the Civil Rights Act…."). Finally, like its predecessor the UAP, the EDR Notice reiterated that:

> Because the EDR changes the forum in which you may pursue claims against U-Haul and affects your legal rights, you may wish to review the EDR with an attorney or other advisor of your choosing. U-Haul encourages you to do so. **Your decision ... to continue employment with [U–Haul] constitutes your agreement to be bound by the EDR."**

*Id*. (emphasis in original).

Jones contends that defendants engaged in "discriminatory conduct and other wrongful acts [ ] throughout the many years of Jones's employment with certain acts occurring in 2007, 2010, 2011, 2012 and 2013. Am. Compl. ¶ 4, doc. 9. Specifically, Jones alleges that for a period of months during 2007, she would answer the telephone at work and the caller would use racial epithets. *Id*. at ¶ 5. On June 13, 2007, Jones informed defendants of the offensive telephone calls by sending an email to U-Haul management. *Id*., Ex. 3; *see* Pl.'s Mem. in Opp'n at 10, doc. 15 . As a result of her email, Jones alleges that defendants conditioned Jones's continued employment upon her agreeing to the updated EDR Policy, which Jones allegedly signed electronically on June 18, 2007. Am. Compl., at ¶ 5. Jones maintains that she "has no recollection of signing, electronically or otherwise, an arbitration or employment dispute resolution policy in June, 2007." Pl.'s Mem. in Opp'n at 3, doc. 15. After allegedly signing the updated EDR Policy, Jones continued her employment with defendants for six years before voluntarily resigning from her position on June 24, 2013. Am. Compl., at ¶¶ 2–5.

Jones first filed a Complaint against defendants on November 22, 2013 in the Franklin County Court of Common Pleas asserting violations of Title VII, the ADEA, the Ohio Fair Employment Practices Act, and various claims under common law. *Stacy A. Jones v. U-Haul Co. of Massachusetts and Ohio Inc.*, *et. al.*, Case No. 13CV012772 (Franklin Cnty. Ct. C.P.). On December 18, 2013, Jones filed an Amended Complaint (doc. 9) in which she further alleged that the purported arbitration agreement she signed on June 18, 2007 is "an adhesion contract, invalid, unenforceable, unconscionable, inequitable, and was procured through undue influence and duress." Am. Compl. ¶¶ 1, 6. Defendants removed the case to this Court on December 26, 2013 on the basis of federal subject matter jurisdiction.

Defendants assert that Jones's lawsuit must be dismissed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, because her claims are subject to one, if not two mandatory arbitration agreements existing between the parties. Defs.' Mot. to Compel Arbitration, doc. 14 at 1. Additionally, defendants request an award of the attorneys' fees incurred as a result of Jones's refusal to voluntarily submit her claims to arbitration, despite a demand by defendants. *Id.* at 12; Defs.' Reply, doc. 16 at 3–4.

In support of its motion, defendants submitted: (1) the affidavit of Robert M. Aleo, defendants' director of human resources programs (doc. 14-1); (2) the UAP Notice and UAP Agreement that Jones allegedly signed by hand on January 12, 2007 (doc. 14-2); (3) the EDR Notice and EDR Agreement that Jones allegedly signed electronically on June 18, 2007 (doc. 14-3); (4) Jones's August 1999 employment application (doc. 14-4); (5) the affidavit of Meghan E. Hill, defendants' attorney of record (doc. 14-5); (6) a series of emails between the parties' attorneys discussing the enforceability of the arbitration agreement (doc. 14-6–doc. 14-8); and (7) six out of circuit cases upholding the enforceability of defendants' EDR Policy (doc. 14-9).

## II.    Standard of Review

The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies in the employment setting and agreements to arbitrate employment discrimination disputes have been enforced. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). Where a cause of action is determined to be covered by arbitration, the court "*shall* on application of one of the parties stay

the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added).

"The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960).

Further, "the Supreme Court has held that the FAA preempts state law regarding arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10–11 (1984)). However, state contract law governs issues of formation, such as validity, revocability, and enforceability, with respect to the arbitration clause. *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005).

"In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 851 (S.D. Ohio 2003). Thus, the Court will review the pleadings and evidence submitted by the parties and construe the facts therein in a light most favorable to Jones.

## III.    Discussion

Defendants argue that Jones's claims must proceed to arbitration because she signed the UAP Agreement by hand on January 12, 2007 which included an agreement to arbitrate all claims related to her employment. Further, defendants argue that Jones reaffirmed her

commitment to arbitrate any and all employment related disputes with defendants when she electronically signed a second arbitration agreement, the EDR Agreement, on June 18, 2007.[1]

In response, Jones alleges that the UAP Agreement is inapplicable to her because when she signed the UAP on January 12, 2007, she was not a new employee. Further, Jones claims that she has "no recollection" of electronically signing the EDR Agreement on June 18, 2013 and she questions the authenticity of her alleged electronic signature.

Jones next challenges the enforceability of both the UAP and the EDR Agreements on four grounds: (1) that both Agreements are unconscionable; (2) that both Agreements were procured through undue influence and duress; (3) that both Agreements lack sufficient consideration; and (4) that Jones did not knowingly and voluntarily waive her constitutional rights to a trial by jury. Additionally, Jones argues that the FAA violates the United States and Ohio Constitutions because it unlawfully impedes a person's right to a trial by jury. Finally, Jones questions the public policy favoring arbitration in employment cases and, through a series of rhetorical questions, essentially asks the Court to review the practical implications of arbitration agreements on the constitutional rights of citizens.[2]

In the following subsections, the Court addresses each of Jones's defenses to contract enforceability as they relate to both the January 12, 2007 UAP and the June 18, 2007 updated EDR Policy, respectively, as well as Jones's constitutional and public policy arguments.

---

[1]    The Court will refer to the UAP Agreement and the EDR Agreement collectively as the "Agreements."

[2]    The Court notes that Jones, who is represented by legal counsel, has largely failed to comply with S.D. Ohio Civ. R. 7.2(e) with respect to the presentation of evidence. *See* S.D. Ohio Civ. R. 7.2(e) ("Evidence ordinarily shall be presented in support of or in opposition to any Motion, using affidavits, declarations pursuant to 28 U.S.C. § 1746, deposition excerpts, admissions, verified interrogatory answers, and other documentary exhibits. Unless already of record, such evidence shall be attached to the memorandum or included in an appendix thereto, and shall be submitted within the time limit set forth above."). Many of Jones's factual allegations are contained not in an affidavit or a declaration, but in her Memorandum in Opposition (doc. 15).

Additionally, the Court notes that Jones's Memorandum in Opposition is devoid of almost any legal authority supporting her arguments. In total, Jones cites to the Ohio Constitution three times and the Seventh Amendment to the United States Constitution once. Jones's philosophical arguments regarding employment-at-will, which include quotes from legal scholars, also lack citations. *See* S.D. Ohio Civ. R. 7.2(b).

## A.      Arbitrability

A threshold issue implicit in the arbitration question involves "arbitrability" or, whether the question of whether Jones' claims must proceed to arbitration, is even properly before this Court. The United States Supreme Court has explained that:

> [A] gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. *See* [*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–46, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ] (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. *See, e.g., AT & T Technologies, supra*, at 651–652, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241–243, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement).

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *See also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue.").

As neither party disputes that the issue of whether Jones's claims are subject to arbitration is properly before this Court, the analysis now turns to Jones's various arguments challenging the enforceability of the two arbitration provisions present in this case.

## B.      Whether the Court Should Compel Arbitration

Defendants move this Court to compel arbitration and dismiss or stay this litigation pending arbitration. The Sixth Circuit has explained the inquiry related to such a motion:

> When considering a motion to stay proceedings and compel arbitration under the [Federal Arbitration] Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (citing *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F.Supp. 1273, 1278 (S.D. Ohio 1990)).

1. **Whether the Parties Agreed to Arbitrate and the Enforceability of the Agreements**

"In determining whether the parties have made a valid arbitration agreement, 'state law may be applied *if* that law arose to govern issues concerning the validity, revocability,' and enforceability of contracts generally, although the FAA preempts 'state laws applicable to *only* arbitration provisions.'" *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (emphasis in original) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996)). Thus, "[s]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'" *Id.* at 889 (quoting *Casarotto*, 517 U.S. at 687).

In this case, Jones signed both the UAP and EDR Agreements in Ohio and her employment and subsequent voluntary resignation occurred in Ohio. Therefore, to determine whether the UAP and EDR Agreements are enforceable, the Court will apply the generally applicable precepts of Ohio contract law. The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003) (quoting *Great Earth*, 288 F.3d at 887).

a. **Whether the UAP applies to Jones**

As an initial matter, Jones argues that the UAP Agreement is unenforceable because, although she signed the UAP Agreement by hand in January 2007, the terms of the UAP Notice render the UAP inapplicable to Jones. The UAP Notice requires "mandatory, binding arbitration of disputes, for all new employees…The UAP applies to all [defendants'] employees who are hired after February 20, 2006…." U-Haul Arbitration Policy, doc. 14-2 at 1.  It is undisputed that when Jones signed the UAP Agreement in January 2007 she was not a new employee; defendants hired Jones in September 1999.

The Court examines arbitration language in a contract in light of the strong policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007). The United States Supreme Court has stated: "While ambiguities in the language of the agreement should be

resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House*, *Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted). "[W]here ambiguity in agreements involving arbitration exists, . . . the strong presumption in favor of arbitration applies . . . ." *Huffman v. Hilltop Co.*, *LLC*, 2014 WL 1243795 at *4 (6th Cir. Mar. 27, 2014) (citing *Litton Fin. Printing Div.*, *a Div. of Litton Bus. Sys.*, *Inc. v. N.L.R.B.*, 501 U.S. 190, 209 (1991)).  Ohio also has a "strong public policy favoring arbitration."  *Schaefer v. Allstate Ins. Co.*, 590 N.E.2d 1242, 1245 (Ohio 1992).  All doubts should be resolved in favor of arbitration.  *See Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009) (quoting *Ignazio v. Clear Channel Broad. Inc.*, 865 N.E.2d 18, 21 (Ohio 2007)).

Jones's restrictive reading of the UAP as applying only to "new" employees hired after February 20, 2006 is not supported by the language of the UAP. It may be true that only new employees were required to sign, but the UAP contains language stating that it would apply to all existing employees who, like Jones, chose to sign it. The UAP gives notice to employees who received it and agreed to sign: "IT APPLIES TO YOU." U-Haul Arbitration Policy, doc. 14-2 at 1. Further, the UAP states that it "will govern all *existing* or future disputes between you and [defendants]…." *Id*. (emphasis added). A new employee who signed the UAP before beginning work and as a condition of accepting employment, could not have had any *existing* disputes with defendants relating to his or her employment. Only defendants' then existing employees, such as Jones, could have had any existing employment-related disputes with defendants. This language demonstrates the parties' intention that the UAP apply to both new employees and existing employees. Likewise, the UAP states that "[y]our decision to accept employment or to *continue* employment with [defendants] constitutes your agreement to be bound by the UAP." *Id*. (emphasis added). The UAP's reference to continuing employment can only be interpreted to pertain to defendants' then existing employees.

For contract formation to occur, the parties must objectively manifest an intent to be bound. *McSweeney v. Jackson*, 691 N.E.2d 303, 308 (Ohio Ct. App. 1996).  When Jones signed the UAP on January 12, 2007 she objectively evidenced a intent to be bound by its terms, including the requirement that she submit to final and binding arbitration any employment related claims she may have against defendants.  Jones does not contend that she never received a copy of the UAP, nor does she contend that she was never given an opportunity to review its

provisions.  While the UAP Notice indicated that only new employees were required to sign, Jones chose to sign the UAP anyway.

Plaintiff's counsel's unsubstantiated assertions in the brief that Jones was "confused and did not actually understand the [UAP]…, had no idea what she was signing…,[and] did not realize that the [UAP] applied only to new employees," Pl's Mem. in Opp'n at 2–3, doc. 15, are contradicted by both the facts and the law. Jones was able to read and write in English, as she graduated from high school and attended college courses. Jones Employment Application, doc. 14-4.  Reading and writing in English was a requirement of her job and Jones remained successfully employed with defendants for over thirteen years. Aleo Aff. ¶ 20, doc. 14-1.  The UAP encouraged employees to review the document with legal counsel. U-Haul Arbitration Policy, doc. 14-2 at 1 ("Because the UAP changes the forum in which you may pursue claims against U-Haul and affects your legal rights, you may wish to review the UAP with an attorney or other advisor of your choosing. U-Haul encourages you to do so.").

Moreover, "it will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *ABM Farms*, *Inc. v. Woods* 692 N.E.2d 574, 579 (Ohio 1998) (citing *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)). "One who signs a contract is presumed to know its contents, and ... if he has had an opportunity to read the contract which he signs he is bound by its provisions." *Sears*, *Roebuck & Co. v. Lea*, 198 F.2d 1012, 1015 (6th Cir. 1952). "A person of ordinary mind cannot say that he or she is misled into signing an agreement that is different from the agreement the person intended to sign, when that person could have ascertained what agreement he was entering into by merely reading it when he signed it." *W.K. v. Farrell*, 853 N.E.2d 728, 732 (Ohio Ct. App. 2006) (citing *Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990)).

The Court thus finds that while the terms of the UAP did not require veteran employees to sign, Jones demonstrated her intent to be bound when she chose to sign the UAP after having an opportunity to review its contents. Jones's allegations that the Agreements lacked sufficient consideration and were procured through undue influence and duress, are addressed below.

### b.      Whether Jones electronically signed the EDR Policy

Turning to the EDR Agreement, plaintiff's counsel again makes an unsubstantiated allegation that Jones "has no recollection of signing, electronically or otherwise, an arbitration or

employment dispute resolution policy in June, 2007." Pl.'s Mem. in Opp'n at 3. Jones also questions the authenticity of her alleged electronic signature on the June 2007 EDR Agreement.

Defendants argue that Jones did in fact sign the EDR Agreement in June 2007 and point to the affidavit of Robert Aleo (doc. 14-1) to prove not only that Jones signed the EDR Agreement, but also the authenticity of her signature. Finally, defendants maintain that even if Jones did not sign the EDR Agreement, she is still bound by its terms because Jones continued her employment with defendants for six years following the implementation and notice of the EDR Policy.

Jones has not submitted any evidence to support her allegations regarding the authenticity of her electronic signature on the June 2007 EDR Agreement. In fact, as defendants note in their reply (doc. 16) the only evidence submitted on this issue strongly supports a finding that Jones electronically signed the EDR agreement, and that her signature is authentic. In his affidavit, Robert Aleo states that the "[EDR Policy] was placed on the U-Haul Human Resources Service Center for existing employees to sign electronically." Aleo Aff. ¶ 12, doc. 14-1. If employees agreed to the EDR Policy's terms, they were to sign it electronically via the electronic human resources document processing system website. *Id*. Aleo asserts that existing employees, including Jones, were familiar with online human resources system because they received training in its use, and the online "system served as, among other things, the vehicle by which employees could monitor and administer their benefits." *Id* at ¶ 13.

Further, Aleo describes the steps an existing employee, such as Jones, needed to take in order to access defendants' human resources online system and to protect the authenticity of their online activity. These steps included a requirement that employees enter their social security number, or their "System Member Identification Number and a confidential, self-selected password" to access the online system. *Id*. Employees then needed to input their names into the system to verify their signatures. Once an employee electronically signed and submitted a document, such as the EDR Policy, using the online system, "[the document] can be accessed and printed…but cannot be altered." *Id*.

Electronic signatures are binding under Ohio law. *See* O.R.C. § 1306.06 ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form ... A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation."). Moreover, assent to a contract can be manifested through continued

employment. *See Dantz v. Am. Apple Grp.*, *LLC*, 123 F.App'x 702, 708 (6th Cir. 2005) ("Mutual assent is manifested by Dantz's continued employment after having been told explicitly that the arbitration agreement was a condition of her employment."); *Porter v. MC Equities*, *LLC*, 2012 WL 3778973 at *6 (N.D. Ohio 2012) ("an employee's continued employment with her employer alone is sufficient consideration for an arbitration agreement under Ohio law").

In light of the evidence submitted by defendants and the lack of any evidence whatsoever submitted by Jones to the contrary, the Court finds that Jones's electronic signature on the June 2007 EDR Agreement is authentic, valid and binding. Additionally, by continuing her employment with defendants for six years, Jones's conduct alone was sufficient to bind her to the terms of the EDR Policy.

As such, to the extent Jones maintains that she does not remember signing the EDR Agreement, or that her signature was not authentic, this fails to create any issue as to whether the parties had a valid agreement to arbitrate.

### c.     Whether the UAP and EDR Agreements are unconscionable

Jones next argues that both the UAP and the EDR Agreements are unconscionable and therefore, unenforceable.

In Ohio, unconscionability is defined as "'an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party.'" *Dorsey v. Contemporary Obstetrics & Gynecology*, *Inc.*, 680 N.E.2d 240, 243 (Ohio Ct. App. 1996) (quoting *Collins v. Click Camera & Video*, *Inc.*, 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993)). Ohio courts conduct a two-prong inquiry into whether a contract is unconscionable. *Morrison v. Circuit City Stores*, *Inc.*, 70 F. Supp. 2d 815, 821 (S.D. Ohio 1999) *aff'd on other grounds*, 317 F.3d 646 (6th Cir. 2003) (citing *Dorsey*, 680 N.E.2d at 243). The first prong looks at whether the contract terms are so unfair and unreasonable as to constitute substantive unconscionability while the second prong focuses on the relative bargaining power of the contracting parties to determine whether procedural unconscionability exists. *Id.* Under Ohio law, the party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *Stachurski v. DirecTV*, *Inc.*, 642 F. Supp. 2d 758, 767 (N.D. Ohio 2009) (citing *Hayes*, 908 N.E.2d at 412). The Court will first address the issue of whether the UAP and EDR Agreements are procedurally unconscionable.

In determining procedural unconscionability, Ohio courts look to "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Cross v. Carnes*, 724 N.E.2d 828, 837 (Ohio Ct. App. 1998). "The crucial question is whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print ...?'" *Ohio Univ. Bd. of Trs. v. Smith*, 724 N.E.2d 1155, 1161 (Ohio Ct. App. 1999) (quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)).

Here, Jones was able to read and write in English, she graduated from high school and even attended college courses. Moreover, Jones's position as a Reservation Manager required her to be able to read and write in English and Jones successfully worked for defendants for over thirteen years. Also, Jones indicated on her employment application (doc. 14-4) that she possessed clerical, typing, and word processing skills. While there is no indication that defendants explained the terms of the UAP or EDR Agreements to Jones, the Agreements themselves unambiguously encouraged Jones to seek legal advice if she didn't understand what she was signing. *See* U-Haul Arbitration Policy, doc. 14-2 at 1 (providing that "Because the UAP changes the forum in which you may pursue claims against U-Haul and affects your legal rights, you may wish to review the UAP with an attorney or other advisor of your choosing. U-Haul encourages you to do so."); U-Haul's EDR Policy, doc. 14-3 at 3 (providing that "Because the EDR changes the forum in which you may pursue claims against U-Haul and affects your legal rights, you may wish to review the EDR with an attorney or other advisor of your choosing. U-Haul encourages you to do so."). Moreover, there is no indication that Jones asked any questions of defendants or sought time to review the materials, even though the Agreement encouraged her to do so.

Although the bargaining power was not equal, as it often is not in employer-employee relationships, the Court cannot conclude that Jones was a victim of procedural unconscionability. Mere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement in the employment context. *Gilmer*, 500 U.S. at 33; *Neubrander v. Dean Witter Reynolds*, *Inc.*, 610 N.E.2d 1089, 1091 (Ohio Ct. App. 1992).

The evidence presented clearly establishes that Jones was well educated; Jones had a reasonable opportunity to understand the terms of the Agreements; and the material terms of both Agreements were unambiguous and conspicuous. As such, the Court concludes that under Ohio law the Agreements in this particular case do not rise to the level of procedural unconscionability.

As stated above, the party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *Stachurski*, F.Supp. 2d at 767 (citing *Hayes*, 908 N.E.2d at 412). Here, Jones has failed to meet that burden. Therefore, having determined that both Agreements do not rise to the level of procedural unconscionability, the Court need not proceed with a substantive unconscionability analysis.

### d.     Whether the UAP and EDR Agreements are contracts of adhesion

Jones's next argument against compelled arbitration is that the UAP and EDR Agreements are both contracts of adhesion and therefore, unconscionable and unenforceable.

The Ohio Supreme Court referred to Black's Law Dictionary in describing a contract of adhesion as a "'[s]tandardized contract form offered ... on essentially [a] 'take it or leave it' basis.'" *Sekeres v. Arbaugh*, 508 N.E.2d 941, 946 (Ohio 1987) (quoting Black's Law Dictionary 38 (5th ed.1979)). Contracts of adhesion are, generally stated, contracts drafted by one party without regard to the concerns of the other party; they are created without meaningful negotiations. *Raasch*, 254 F. Supp. 2d at 867 (citing *Ohio Univ. Bd. of Trustees*, 724 N.E.2d at 1161). Where a contract is voided for being one of adhesion, it is generally on the basis that it is unconscionable from a procedural standpoint.[3] *Id*.

In *Raasch*, the court analyzed the issue of "whether an employer can enforce a mandatory arbitration policy imposed upon an at-will employee, where the employer had stated upon the initiation of the policy that the employee's continued employment with the company…would constitute his acceptance of that policy." 254 F. Supp. 2d at 850. After rejecting the plaintiff's adhesion contract arguments against enforceability, the court stated:

> If an employer were not allowed to dictate terms of a new policy and impose [the] same upon its at-will employees as a condition of continued employment, then "at will" would

---

[3]     Jones fails to set forth any evidence or arguments specific to her contention that the Agreements in this case are contracts of adhesion. Moreover, Jones's arguments that might support her allegations that the Agreements are contracts of adhesion have already been rejected above as failing to amount to procedural unconscionability.

no longer mean "at will." That might be the better public policy, and there is certainly a rich body of commentary setting forth the arguments in favor of requiring employers to state good faith, business-necessitated reasons for terminating what would historically be at-will employees. It is not, however, the current law, and it is not for this federal court to inject its own policy views into the at-will employment doctrine of Ohio. In any event, two observations bear mention: *First,* NCR may well believe, as it seems to, that the mandatory arbitration of certain disputes makes sound business sense, and it is simply not a court's place to question the business decisions of a private company. *Second,* as noted above, the Supreme Court has made it clear that as long as an arbitral forum is provided for vindicating statutory rights, it is no moment that the right to vindicate same in a court has been denied. Quite simply, the act of replacing an employee's access to the courts for airing employment-related disputes with access to an arbitral forum, provided it appears fair and impartial, cannot be viewed as a penalty or the like.

*Id*. at 867−68 (emphasis in original).

The Court concurs with the *Raasch* court's reasoning set forth above. Therefore, as with Jones's unconscionability arguments, the Court rejects Jones's allegations that the UAP and EDR Agreements are unenforceable contracts of adhesion.

### e.    Whether Jones was under duress or undue influence

Jones next argues that she was unduly influenced into signing the UAP and EDR Agreements and that she signed the Agreements while under duress. In terms of the January 2007 UAP Agreement, Jones alleges that she "was called into management's office and pressured to sign the [UAP]," that the UAP was  "forced upon her as a requirement to keep her employment" and that she only signed the Agreement "in order to keep her job." Pl.'s Mem. in Opp'n at 2−3, doc. 15. In terms of the June 2007 EDR Agreement, Jones alleges that in retaliation for her email to defendants informing them of a caller using racial slurs towards Jones, defendants conditioned her continued employment upon her assent to the EDR Agreement. Am. Compl. ¶ 5.

The elements of undue influence under Ohio law are: "1) a susceptible party; 2) another's opportunity to influence the susceptible party; 3) the actual or attempted imposition of improper influence; and 4) a result showing the effect of the improper influence." *Firestone v. Galbreath*, 895 F.Supp. 917, 931 (S.D. Ohio 1995) (citing *West v. Henry*, 184 N.E.2d 200, 203 (Ohio 1962)). To establish duress under Ohio law, plaintiff must demonstrate that: "1) one person involuntarily accepted terms offered by another; 2) circumstances permitted no other alternative; and 3) the circumstances were the result of coercive acts of the opposite party." *Id.* (citing *Blodgett v. Blodgett*, 551 N.E.2d 1249, 1251 (Ohio 1990)).

Here, Jones has submitted absolutely no evidence demonstrating that defendants imposed improper influence over her or engaged in coercive acts to secure her signature on either the UAP or the EDR Agreements. Thus, Jones fails to support her argument that either of the Agreements at issue is unenforceable on the grounds of undue influence or duress.

To the extent that Jones maintains that the Agreements were "forced upon her as a requirement to keep her employment," she is essentially correct. Both Agreements conspicuously state, in bold and underlined text, that "**Your decision to accept employment or to continue employment with [defendants] constitutes your agreement to be bound by the [UAP/EDR]**." U-Haul Arbitration Policy, doc. 14-2; U-Haul's EDR Policy, doc. 14-3. As held in *Raasch*, in an employment-at-will situation, assent to the terms of an otherwise enforceable arbitration agreement as a condition of continued employment is an acceptable and legally enforceable requirement. Besides being required to sign the EDR Agreement as a condition of employment, Jones has not submitted any evidence of additional circumstances that would show that she was under undue influence or duress. Insofar as Jones alleges that defendants conditioned her continued employment upon her assent to the EDR Agreement in retaliation for her email alleging racial discrimination, the Court finds this argument is also without merit. The evidence shows that "fifty employees, including Dean Haske, in U-Haul Co. of Ohio, signed the EDR Agreement during the period of June 15–22, 2007." Aleo Aff. ¶ 16, doc. 14-1. Thus, Jones was not singled out in being required to sign the EDR Agreement.

### f.    Whether there was sufficient consideration for the Agreements

Next, Jones alleges that both the UAP and the EDR Agreements are unenforceable because defendants failed to provide any new consideration in exchange for Jones's assent. Additionally, Jones takes issue with the following provision, found in both the UAP and the EDR Agreements:

> [N]othing in this Agreement changes or in any way modifies my employment-at-will relationship with U-Haul; that is, either U-Haul or I can end the employment relationship at any time for any reason not prohibited by law.

U-Haul Arbitration Policy, doc. 14-2; U-Haul's EDR Policy, doc. 14-3.

Jones argues that the above provision is ambiguous because "both the employee and the employer have the same rights and obligations that they had before the arbitration policy or the purported employment dispute resolution policy existed." Pl.'s Mem. in Opp'n at 2–3. The Court

notes that Jones fails to articulate how any alleged ambiguity in the above provision would render either of the Agreements unenforceable. Arguably, Jones mixes the concepts of contract interpretation and contract enforceability with respect to the ambiguity issue. In light of her rationale, the Court finds that the ambiguity issue is more properly characterized as a lack of consideration issue. Thus, to give Jones the benefit of the doubt, the Court will analyze Jones's argument in the context of whether the Agreements were supported by sufficient consideration.

The Court concludes that both the UAP and the EDR Agreements were supported by sufficient consideration on two separate grounds: (1) Jones's continued employment with defendants, and (2) the parties mutual agreement to submit any employment related claims or disputes to final and binding arbitration.

In the present case, defendants employed Jones as an at-will employee. Under Ohio law, at-will employment is contractual in nature. *Lake Land Emp. Grp. of Akron*, *LLC v. Columber*, 804 N.E.2d 27, 32 (Ohio 2004). The employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee. *Id*. The employer or the employee may legally terminate the relationship at any time for any reason, and either may propose to change the terms of their employment relationship at any time. *Id*. "Thus, mutual promises to employ and to be employed on an ongoing at-will basis, according to agreed terms, are supported by consideration: the promise of one serves as consideration for the promise of the other." *Id*. Where an employer makes a proposal to renegotiate the terms of the parties' at-will employment, and the employee assents to it, thereby accepting continued employment according to the new terms, consideration supporting the new agreement exists. *Id*. The employee's assent to the agreement is given in exchange for the employer's forbearance from discharging the employee. *Id*.

Here, Jones signed the UAP Agreement by hand in January 2007 and continued working for defendants. Five months later, in June 2007, Jones signed the EDR Agreement electronically. Jones then continued working for defendants for six years until June 2013, when she voluntarily resigned from her position. Moreover, both agreements state in bold, underlined text that "**[Y]our decision to accept employment or to continue employment with [defendants] constitutes your agreement to be bound by the [UAP/EDR]**." U-Haul Arbitration Policy, doc. 14-2; U-Haul's EDR Policy, doc. 14-3.

Accordingly, Jones's continued employment with defendants and defendants' forbearance from discharging Jones, served as sufficient consideration needed to form an agreement.

While there is some dispute as to whether continued employment alone, in an employment-at-will relationship, is sufficient consideration to support a new term of employment set forth by the employer, *see Lake Land Emp. Grp. of Akron*, *LLC*, 804 N.E.2d at 33 (questioning whether continued employment by itself is enough to enforce a covenant not to compete imposed upon an existing employee), that is not the case here.

In this case, defendants offered Jones not only continued employment as consideration for the Agreements, but also its own promise to submit to final and binding arbitration any employment related claims or disputes. Both Agreements clearly state: "I acknowledge that in exchange for my agreement to arbitrate, U-Haul also agrees to submit all claims and disputes it may have with me to final and binding arbitration." Where both parties agree to take certain disputes to arbitration and to be bound by the outcome, sufficient consideration exists. *Raasch*, 254 F. Supp. 2d at 864−66 (applying Ohio law) (holding that an employer's mutual agreement to arbitrate all employment-related disputes was sufficient consideration for arbitration agreement).

Therefore, the Court finds that both the UAP and the EDR Agreements are supported by sufficient consideration.

g.    **Whether Jones knowingly and voluntarily waived her constitutional rights**

Although Jones does not directly challenge whether the waiver of her right to a trial by jury was knowingly and voluntarily executed, she alludes to this issue by suggesting that the UAP was "forced upon her," that she was "pressured" to sign the Agreements, and that "[a]t no time did Jones intend or expect that she was waiving her constitutional rights to a trial by jury or her rights to file a court action." Pl.'s Mem. in Opp'n at 2−3, doc. 15.

As an initial matter, "[i]t is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally.... Indeed, a presumption exists against its waiver." *Nat'l Equip. Rental*, *Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981)); *see also Boyd v. Allied Home Mortg. Capital Corp.*, 523 F. Supp. 2d 650, 653 (N.D. Ohio 2007) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)). The Sixth Circuit has noted that "the constitutional right to

jury trial may only be waived if done knowingly, voluntarily and intentionally, and [ ] whether this standard was met in a given case is a constitutional question separate and distinct from the operation of rules of substantive contract law...." *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755–56 (6th Cir. 1985). Moreover, the Sixth Circuit has also recognized that under particular circumstances employers and employees may negotiate a valid release of ADEA and Title VII claims. *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995) (citing *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039 (6th Cir. 1986), *cert. denied*, 479 U.S. 850 (1986)). The Court applies "ordinary contract principles in determining whether such a waiver is valid, remaining alert to ensure that employers do not defeat the policies of the ADEA and Title VII by taking advantage of their superior bargaining position or by overreaching." *Id*. The question, therefore, is whether Jones knowingly and voluntarily waived her constitutional right to a trial by jury when she signed the UAP and EDR Agreements.

"In evaluating whether a [waiver] has been knowingly and voluntarily executed, we look to (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Id.*

The record shows that Jones was an educated, managerial employee who was capable of understanding the terms of the Agreements. On both the UAP and the EDR Agreements, the waivers of the right to file suit in federal court are plain and conspicuous. To the extent Jones alleges that her waiver was involuntary because she was subject to undue influence and duress when executing the Agreements, the Court has already rejected those arguments above. Further, while Jones claims she did not understand the Agreements, both Agreements suggest and encourage employees to seek legal advice with respect to the Agreements because "the [UAP/EDR] changes the forum in which you may pursue claims against [defendants] and affects your legal rights." Finally, as addressed above, both Agreements were supported by valid consideration (the parties' mutual agreement to arbitrate employment related disputes and Jones's continued employment with defendants). Considering these factors, the Court concludes that Jones knowingly and voluntarily waived her right to pursue her employment claims against defendants in federal court.

### h. Constitutionality of the Federal Arbitration Act and Jones's public policy arguments

Jones argues that the FAA violates the United States and Ohio Constitutions because it unlawfully impedes a person's right to a trial by jury. Moreover, Jones contends that judicial review of the FAA is also unconstitutional, stating, "The judicial branch's review of a matter begins with the applicable provisions of the state and federal constitutions. To begin a judicial analysis with the statute at issue is to abdicate the important role of the judicial branch…." Pl.'s Mem. in Opp'n at 4, doc. 15.

Finally, Jones questions the public policy favoring arbitration stating:

> There is no public policy favoring arbitration at the expense of guaranteed constitutional rights protected by the Ohio Constitution and the Constitution of the United States of America. Such a claim is factually unsubstantiated. Simply saying it is policy does not make it so.

*Id*. at 5, doc. 15.

Rule 5.1 of the Federal Rules of Civil Procedure governs the process for challenging the constitutionality of statues, providing:

> **(a) Notice by a Party.** A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:
>
> **(1)** file a notice of constitutional question stating the question and identifying the paper that raises it, if:
>
> > **(A)** a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or
> > ...
> **(2)** serve the notice and paper on the Attorney General of the United States if a federal statute is questioned…either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.
>
> **(b) Certification by the Court.** The court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned.

 Fed. R. Civ. P. 5.1(a).

Because Jones has not filed that notice, the Court will not consider Jones's constitutional arguments or certify her questions regarding the FAA's constitutionality to the Attorney General of the United States under Rule 5.1(b).

Jones next questions the public policy favoring arbitration. In *Moses H. Cone Mem'l Hosp.*, the Supreme Court stated that the Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements." 460 U.S. at 24; *see also Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995). Ohio courts also recognize a "strong public policy favoring arbitration." *Schaefer*, 590 N.E.2d at 1245. Moreover, in addition to a constitutionally-recognized right to a jury trial, Ohio courts hold the "concept of 'freedom of contract' to be fundamental to our society." *Royal Indem. Co. v. Baker Protective Serv.*, *Inc.*, 515 N.E.2d 5, 7 (Ohio Ct. App. 1986) (citing *Blount v. Smith*, 231 N.E.2d 301, 305 (Ohio 1967)).

The Court is not persuaded by Jones's public policy argument against arbitration agreements. Contrary to Jones's assertion that "[s]imply saying that it is policy does not make it so," when the United States Supreme Court "says" there is strong public policy favoring arbitration, as it has done repeatedly for years, then it *does* "make it so." The Agreements at issue here are not void as being against public policy and because the Court finds that such arguments are meritless, the Court declines to address them any further.

### 2. The Scope of the Arbitration Agreements

Having determined that the parties agreed to arbitrate and that both the UAP and EDR Agreements are enforceable, the Court must now determine whether Jones's claims are within the scope of the arbitration agreements. The party refusing to comply with an arbitration agreement has the burden of proving that the claims at issue are unsuitable for arbitration. *Morrison v. Circuit City Stores*, *Inc.*, 317 F.3d 646, 659 (6th Cir. 2003) (en banc).

Both the UAP Notice and the EDR Notice provide:

> Examples of the type of disputes or claims covered by the [EDR/UAP] include, but are not limited to, claims for wrongful termination of employment, breach of contract, fraud, employment discrimination, harassment or retaliation under the [ADA], the [ADEA], [Title VII], state fair employment and housing acts or any other state or local anti-discrimination laws, tort claims, wage or overtime claims or other claims under the Labor Code, or any other legal or equitable claims and causes of action…

U-Haul Arbitration Policy, doc. 14-2; U-Haul's EDR Policy, doc. 14-3.

In her Amended Complaint, Jones asserts claims under Title VII, the ADEA, the Ohio Fair Employment Practices Act, as codified, O.R.C. § 4112, and Ohio common law claims of wrongful discharge, harassment, hostile work environment, disparate treatment, intentional infliction of emotional distress, breach of implied covenant of good faith and fair dealing, breach

of contract, tortious interference with contract, tortious interference with business relationship, and negligent retention. Am. Compl. ¶ 1.

"If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms." *Simon v. Pfizer*, *Inc.*, 398 F.3d 765, 773 n. 12 (6th Cir. 2005). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S at 24–25.

Here, there is no question, nor does Jones dispute, that all of her claims against defendants expressly fall within the scopes of the UAP and the EDR Policies.

### a. Claims against defendants Haske and Tucker are within the scope of both the UAP and the EDR Policies

While Jones alleges that her claims against defendants Haske and Tucker in their individual capacities "are outside any purported arbitration policy or employment dispute resolution policy," the plain language of both the UAP and the EDR clearly indicate otherwise.

Both Agreements provide: "I understand that… final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against [defendants]… or its parent, subsidiary, sister, or affiliated companies or entities, and each of its and/or their employees, officers, directors, or agents…." U-Haul Arbitration Policy, doc. 14-2; U-Haul's EDR Policy, doc. 14-3.

"Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *Savedoff v. Access Grp.*, *Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (applying Ohio law) (quoting *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (Ohio 2007)). Contractual language is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations."  *Savedoff*, 524 F.3d at 763 (quoting *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003)).

The Court finds that the language in both the UAP and the EDR Agreements is unambiguous and susceptible to only one meaning: that claims against defendants' employees, such as Haske and Tucker, that are related in any way to Jones's employment, are subject to final and binding arbitration. Therefore, Jones's claims in the present case against Haske and Tucker are within the scope of the two Agreements, and subject to final and binding arbitration.

### 3. Whether Congress Intended Jones's Federal Statutory Claims to be Nonarbitrable

Next the Court must answer the question of whether Congress intended Jones's federal statutory claims to be nonarbitrable. Jones asserts claims under the ADEA and Title VII.

It is well-settled that employment-related statutory claims, such as ADEA claims, may validly be subject to an arbitration agreement enforceable under the FAA. *Gilmer*, 500 U.S. at 26 (finding that ADEA claim was arbitrable and observing that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA"). Moreover, the Sixth Circuit has expressly held that "[C]ongress did not intend to exclude Title VII claims from arbitration." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 509 (6th Cir. 2004) (citing *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310 (6th Cir. 1991).

As such, the Court concludes that Congress did not intend Jones's claims under the ADEA and Title VII to be nonarbitrable.

### 4. Whether to Stay or Dismiss the Proceedings

Finally, where claims are referred to arbitration, the FAA provides for a stay of the court proceedings "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In cases, such as the present one, where *all* of a party's claims are subject to arbitration, courts may properly dismiss the complaint. *See Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration).

"The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). "Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." *Gilchrist v. Inpatient Med. Servs., Inc.*, 2010 WL 3326742 at *5 (N.D. Ohio 2010) (quoting *Nestle Waters N. Am., Inc. v. Bollman,* 2006 WL 3690804 at *6 (W.D. Mich. 2006) *aff'd*, 505 F.3d 498 (6th Cir. 2007)).

Given that all of Jones's claims are subject to final and binding arbitration, the Court elects to dismiss this case without prejudice and will do so after the issue of a possible award of defendants' costs and attorneys' fees has been resolved.

**IV.     Conclusion**

The Court concludes that both the UAP Agreement and the EDR Agreement are valid and enforceable under Ohio law and federal law. Further, the Court finds that both Jones's constitutional challenge to the FAA and her public policy arguments opposing arbitration fail as they each are without any merit and directly contrary to well-established, binding legal precedents. For the foregoing reasons, defendants' motion to compel arbitration and dismiss judicial proceedings pending arbitration (doc. 14) will be **GRANTED**.

The Court takes notice that in their present motion and reply brief, defendants suggested that an award of fees and costs would be appropriate in this case. If defendants wish to pursue an award of fees and costs, they may file a motion with the Court for the fees and costs incurred in preparing the present motion, no later than thirty days from the date hereof.


s/ James L. Graham
JAMES L. GRAHAM
United States District Judge


DATE: April 23, 2014